This special case was made on account of a difference in opinion between WILLIAMS, J., and HAYWOOD, J., the latter being clearly of opinion she was not entitled to her dower; the other being very clear that she was entitled.
The two questions here are, whether a widow be entitled to dower in lands of which her husband died seized or possessed only, or whether she be entitled as at common law to dower in all the lands of which the husband was seized during the coverture; and, secondly, whether lands are evicted out of the possession of the debtor by the sheriff's levying an execution upon them in the lifetime of the debtor.
As to the first point, it was a principal object of this act to take off all restraints from the alienation of lands, to the end that this species of property might be accommodated to the purposes of individuals engaging in useful undertakings and to the principles of a republican government. This act destroys estates tail entirely, and in order to enable husbands to convey their lands, free from the incumbrances of the wife's claim of dower, it directs that this claim shall commence for the future, from the death of the husband; making a provision for her against unfair conveyances made by the husband with intent to defraud her of her dower; which plainly discovers the meaning of the Legislature to be that with respect to fair conveyances, she was not entitled to dower; which point at once proves and establishes the doctrine that dower at the common law is abolished, for by the common law the widow *Page 193 
was entitled to dower in all the lands the husband sold after the coverture; whereas, now, she cannot claim dower in them if fairly sold. If a wife can yet claim dower at the common law, the husband cannot convey his lands free from incumbrances, and the object of the Legislature is not attained. An affirmative act, if it imply a negative, may operate as a repealing act. Now, if a widow since the passing of the act of 1784 is to have dower in the lands her husband died seized of, it seems to follows she is not entitled to dower in lands he did not die seized of; otherwise, where was the use of saying she should have dower out of those lands he died seized of. If she is still entitled to dower at the common law, the whole of section 8 of the act of 1784 is nugatory and of no signification. The first thing it provides is that she shall have dower of the lands he died seized or possessed of. She was entitled to that, at the common law. It next provides against (245) fraudulent conveyances to defeat her of her dower; the common law entitled her as from the time of the marriage, and any subsequent conveyance, whether fair or unfair, was subject to her dower. Thus the whole clause is useless and vain. But if it is alternative of the old law, then every word has its full effect and operation; and surely a construction that gives some effect to every word is much preferable to that which destroys a whole clause.
If it be said the act intended to create a species of dower different from that at the common law, allowing the widow in some respects greater advantages, though less in others, and to give her choice either of the one or the other, I ask, Where is the authority for such a supposition? The act speaks of no such election, nor is there any reason founded in the spirit of the act to presume such to have been the intention. And, besides, the last clause of the act of 1784 expressly repeals all laws that come within the purview of that act; whereby, as I understand it, all laws providing for the same cases that are provided for by the enacting part of the act are repealed; and this expressly takes in the common law respecting dower. I am, therefore, of opinion that since the act of 1784, ch. 22, a widow is only entitled to dower out of lands her husband died seized or possessed of, and cannot have it out of lands he dies seized of during the coverture, but conveyed away before his death.
As to the second point, whether lands are evicted out of the possession of the debtor by a sheriff's levying an execution upon them in the lifetime of the debtor; for if they are, then the plaintiff's husband was evicted, and so not seized and possessed at the time of his death, as the act requires. I think there can be no doubt but that the completing act *Page 194 
of an execution hath relation to, and effect from, the time of the lien occasioned by the judgment or the execution attaching on the property; or, in other words, that every sale upon a fi. fa. hath relation to the teste of the writ, and is a sale from that time; if not, in the case of lands, from the time of the judgment, and every extent upon an elegit is an extent from the time of the judgment rendered. The reason of this fiction is founded in justice — it is for the purpose of preventing subsequent incumbrances interfering with the interests of the plaintiff, who (246) might be defeated of his debt if such subsequent incumbrances were allowed to have priority to sales happening afterwards, though the executions had issued before. For this, or some such reason, I presume it is that in every case where the law makes a lien to take place on the property, whether real or personal, the execution is good from that time. In the case of a recovery of a real estate, the recoveree died before execution issued, yet as the judgment was as of the first day of the term, and the execution also, the execution when executed vested the property in the recoverer as from the time of the judgment; so that the recoveree was divested of the possession and seizin as from the first day of the term when the judgment was given. Shelley's case, 1 Rep., 106 b. When a judgment is recovered in debt against the ancestor, if a sci. fa. be taken out against the heir, and others terretenants, this sci. fa. goes against the heir as a terretenant, and not as heir; because, the land being bound by the judgment against the ancestor, is in custodia legis, and descends not to the heir; and if under such circumstances the heir gets possession, he is treated as a terretenant. Herbert's case, 3 Rep. In Baker and Long,ante, 1, one of the two parcels of land laid in the declaration was sold under a judgment given against the ancestor in his lifetime; the other parcel under a judgment against the executors, and by the judgment of the Court. The plaintiff recovered the latter, and lost the former, because the judgment against the ancestor had evicted the lands out of his possession so far that they did not descend to the plaintiff. In the case of an execution bearing teste before the death of a testator, but not executed nor even levied till after, it may be lawfully executed; because the lien on the goods commenced with the teste of the writ, and the legal possession of the goods are from that time in custodia legis, and are not in the possession of the writ of executor as executor. 2 L. Ray., 849, 850. But if the teste of the writ of execution be after the death of the testator, there the goods in the hands of the executor cannot be touched. 3 P. Wil., where it is held by Lord Parker that the possession of the goods are evicted out of the lands of the testator in such case by the teste. *Page 195 
Consider it upon the reason of the thing, if the levying the execution will not evict the possession, then what will? Will the sale by the sheriff do it? The sheriff has no right to give possession. The actual corporal possession may still be held by the debtor, but the sale passes the fee and all the interest that the debtor hath. If it is the sale, or the levying either, that works a legal dispossession, then the law no longer (247) governs property in these cases, but the sheriffs in the different counties; for the sheriff by delaying to levy and sell, or by forwarding the levy and sale, will make the widow to be entitled or not to dower, and the creditor to lose part of his debt or not.
Suppose in the present case it had pleased the sheriff to sell on the day he levied, then she would not have been entitled to dower; but as he has sold after the death of the husband, she is entitled. This involves such an absurdity as cannot be endured. Most clearly, the rights of the widow do not depend upon the good pleasure of the officer. The law undoubtedly hath fixed them upon a better foundation. The law makes the lien of an execution against lands to commence from the teste of the writ, and were it not for Bell v. Hill, ante, 72, I should think from the judgment, and to that all subsequent acts have relation; so that the purchaser is in as from that time, and, of course, has all the interest that the debtor had as from a time prior to his death. Like the case where a testator by his will empowers his executors to sell his land, and after his death the executor sells accordingly, the vendee is in by the testator. The law deems it a sale by the devisor himself, for the purpose of overreaching the descent to the heir. Plow. Com., 475. The possession of the heir in that case, after the death of the devisor and before the sale, is just such a kind of possession as that of the husband in the case now before us was, after the teste of the execution or perhaps the judgment — of no consideration in law, when a sale doth in fact afterwards take place.
Let us suppose another case. If a man devise that his executor shall sell his lands, and die; and after his death his heir, who is a married man, enters and dies, and afterwards the executors sell pursuant to the will, would the wife of the heir be entitled to dower? Surely she would not. Yet in this case the heir was as much seized of the land and inheritance as the husband was in the case now before us. But in both cases the seizin and possession of the husband and heir vanish away when the sale takes place, because then the purchaser is in — in the one case, from the devisor immediately, and in the other, from the commencement of the lien upon the land; and whether the commence with the judgment, the teste of the writ, or the levying, each of these preceded the death of the *Page 196 
(248) husband. I have no doubt but that judgment should be for the defendant, the vendee.
In October, 1796, the cause was again moved, MACAY and STONE, JJ., being present; but MACAY, J., not being prepared to give his opinion, the cause was adjourned. It was afterwards moved when WILLIAMS, J., was present, who inclined to change his former opinion. Afterwards the cause went off without a decision.
Cited: Hodges v. McCabe, 10 N.C. 79; Frost v. Etheridge, 12 N.C. 43.